IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| HEATHER ENGLISH, §<br>JOE HAWLEY, and §<br>ROBIN BROUSSARD, §<br>§<br>Plaintiffs, §<br>§<br>v. §      CIVIL ACTION NO. _____<br>§<br>TEXAS FARM BUREAU BUSINESS §      JURY TRIAL DEMANDED<br>CORPORATION, TEXAS FARM §<br>BUREAU CASUALTY INSURANCE §<br>COMPANY, TEXAS FARM BUREAU §<br>MUTUAL INSURANCE COMPANY, §<br>TEXAS FARM BUREAU §<br>UNDERWRITERS, FARM BUREAU §<br>COUNTY MUTUAL INSURANCE §<br>COMPANY OF TEXAS, SOUTHERN §<br>FARM BUREAU LIFE INSURANCE §<br>COMPANY, and TEXAS FARM §<br>BUREAU, §<br>§<br>Defendants. § | |

## PLAINTIFFS' ORIGINAL COMPLAINT & JURY DEMAND

### SUMMARY

1.   This case implicates Defendants' longstanding policy of misclassifying their employees as independent contractors. Texas Farm Bureau Business Corporation, Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, Southern Farm Bureau Life Insurance Company, and Texas Farm Bureau (collectively "Defendants") required or permitted Heather English, Joe Hawley, and Robin Broussard (together "Plaintiffs")—and other similarly situated employees—to work as insurance agents in excess of

40 hours per week but refused to compensate them at the applicable overtime rates.

2. Plaintiffs and other similarly situated insurance agents were not paid any base salary; instead, they were paid exclusively commissions, without any predetermined guaranteed minimum pay per week, and regardless of the number of hours worked. Some agents, like Hawley, chose to participate in a limited-time financing plan offered to brand-new agents only that offset the risks of commission work, but agents could be on the plan for at most a year and many agents, like Hawley, participated in it for mere months. Defendants did not pay Plaintiffs or other similarly situated insurance agents an overtime premium for hours worked in excess of 40 in a week.

3. Defendants' conduct violates the Fair Labor Standards Act ("FLSA"), which requires nonexempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

4. Plaintiffs bring a collective action to recover the unpaid wages owed to them and all other similarly situated insurance agents, current and former, of Defendants who worked for any of the Defendants at any time during the three-year period before this Complaint was filed up to the present. These class members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## SUBJECT-MATTER JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. Venue is proper in the Western District of Texas because a substantial portion of the events forming the basis of this suit occurred in this District.

7. A substantially related case involving the same Defendants is pending in the Western District of Texas, *Ferguson v. Texas Farm Bureau, et al.*, Cause No. 6:17-cv-111-RP. That case involves a group of Agency Managers, who were the managers of employees like Plaintiffs and the other similarly situated insurance agents in this case, alleging they were misclassified as exempt independent contractors.

**PARTIES AND PERSONAL JURISDICTION**

8. Plaintiff Heather English is an individual residing in Anson, Jones County, Texas. Her written consent form to this action is attached as Exhibit A.

9. Plaintiff Joe Hawley is an individual residing in Houston, Harris County, Texas. His written consent form to this action is attached as Exhibit B.

10. Plaintiff Robin Broussard is an individual residing in Beaumont, Jefferson County, Texas. Her written consent form to this action is attached as Exhibit C.

11. Defendant Texas Farm Bureau Business Corporation ("TFB Business Corp.") is a Texas corporation, which maintains a presence and corporate address in Waco, McLennan County, Texas 76712. According to the Texas Farm Bureau's "General Career Openings" webpage, it employs "over 820 individuals" in "three companies – Texas Farm Bureau, Texas Farm Bureau Business Corporation and Texas Farm Bureau Casualty Insurance Company." The webpage further describes TFB Business Corp. as "provid[ing] administrative support services to Texas Farm Bureau and its affiliated insurance companies." Defendant TFB Business Corp. may

be served with process by delivering a copy of the Summons and Complaint to its registered agent, being Si E. Cook, 7420 Fish Pond Road, Waco, Texas 76710-1010, or wherever else he may be found.

12. According to the Texas Farm Bureau's "Company Information" webpage, its insurance companies include: (a) Texas Farm Bureau Casualty Insurance Company; (b) Texas Farm Bureau Mutual Insurance Company; (c) Texas Farm Bureau Underwriters; (d) Farm Bureau County Mutual Insurance Company of Texas; and (e) Southern Farm Bureau Life Insurance Company. Texas Farm Bureau utilizes letterhead listing these five companies under the umbrella of the "Texas Farm Bureau Insurance Companies."

13. Defendants' website further represents that Defendants are "Headquartered in Waco, Texas," and the "[l]argest Texas-based insurance provider of auto, home/property, farm/ranch, life, and health insurance."

14. Defendant Texas Farm Bureau Casualty Insurance Company ("TFB Casualty"), is a Texas insurance company, which provides auto insurance policies and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant TFB Casualty may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant TFB Casualty's home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

15. Defendant Texas Farm Bureau Mutual Insurance Company ("TFB Mutual") is a Texas insurance company, which provides home/property insurance policies and maintains a

presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant TFB Mutual may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant TFB Mutual's home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

16.  Defendant Texas Farm Bureau Underwriters ("TFB Underwriters") is a Texas entity providing insurance services, which underwrites insurance policies issued by the other Defendants and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant TFB Underwriters may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant TFB Underwriters' home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

17.  Defendant Farm Bureau County Mutual Insurance Company of Texas ("FB County Mutual") is a Texas insurance company, which provides insurance policies and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant FB County Mutual may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant FB County Mutual's home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

5

18. Defendant Southern Farm Bureau Life Insurance Company ("SFB Life") is a Mississippi insurance company, which provides life insurance policies and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Defendant SFB Life may be served with process by delivering a copy of the Summons and Complaint to its registered agent, being Bo Wilburn, 7420 Fish Pond Road, Waco, Texas 76710-1010, or wherever else he may be found.

19. Defendant Texas Farm Bureau ("TFB") is a Texas corporation, which maintains a presence and corporate address in Waco, McLennan County, Texas 76712. According to its website, TFB "is a membership association led by elected volunteers who are agricultural producers," and "[m]embers from each of the 13 statewide districts nominate a State Director to represent their geographic area on the Board of Directors." Defendant TFB may be served with process by delivering a copy of the Summons and Complaint to its registered agent, being Si E. Cook, 7420 Fish Pond Road, Waco, Texas 76710-1010, or wherever else he may be found.

20. TFB utilizes letterhead listing all these five companies under the umbrella of the "Texas Farm Bureau Insurance Companies."

21. According to Texas Secretary of State records and their website, Defendants share several officers and directors, including, but not limited to, Russell W. Boening, President & Treasurer; Bob Reed, Director; Vernie R. Glasson, Chief Operating Officer; and Cyndi Gerik, Chief Financial Officer & Comptroller.

22. Defendants TFB Business Corp., TFB Casualty, TFB Mutual, TFB Underwriters, FB County Mutual, SFB Life, and TFB (collectively "Defendants") are an integrated enterprise and joint employers of Plaintiffs and the similarly situated misclassified insurance agents.

6

## FLSA COVERAGE

23. At all material times, Defendants were employers within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

24. Defendants controlled the nature, pay structure, and employment relationship of Plaintiffs.

25. Defendants had, at all times relevant to this lawsuit, the authority to hire and fire insurance agents, the authority to direct and supervise the work of insurance agents, the authority to sign on the companies' checking accounts, including payroll accounts, and the authority to make decisions regarding insurance agents' compensation and capital expenditures. Additionally, Defendants were responsible for the day-to-day affairs of the business. In particular, Defendants were responsible for determining whether they complied with the FLSA.

26. As such, pursuant to 29 U.S.C. § 203(d), Defendants acted directly or indirectly in the interest of Plaintiffs' employment as their employer, which makes Defendants liable under the FLSA.

27. Furthermore, at all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of § 203(s)(1) of the FLSA because they have had employees engaged in commerce. *See* 29 U.S.C. § 203(s)(1).

28. Defendants engaged in related activities performed through a unified operation and common control for a common business purpose.

29. Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

30. At all material times, Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by *See* 29 U.S.C. §§ 206–207.

## FACTS

31. Plaintiffs and similarly situated employees have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them proper overtime compensation.

32. Defendants operate a business enterprise selling insurance-related services and products, including auto, home/property, farm/ranch, life, and health insurance.

33. Plaintiffs' primary job duties were the selling of Defendants' insurance services and products.

34. The services provided by Plaintiffs and the other similarly situated insurance agents to Defendants were integrated into Defendants' business operation of selling insurance products, which is inconsistent with a bona fide independent-contractor classification.

35. Plaintiff Heather English started working for Defendants around February 2015 and still works for Defendants. Plaintiff Joe Hawley worked for Defendants from about November 2011 until June 2016. And Plaintiff Robin Broussard started working for Defendants around November 2004 and still works for Defendants. When hired, Plaintiffs and Defendants anticipated that these employment relationships would be long term and last indefinitely.

36. Plaintiffs sold policies exclusively from the Defendants and were formally prohibited from selling insurance for other companies while working for the Defendants, even if the Defendants did not offer a competing product.

37. Defendants issued business cards to Plaintiffs, with the name and logo of the Defendants, which identified each Plaintiff as an "insurance agent" for the Defendants.

38. Plaintiffs were closely and directly supervised by other employees of Defendants.

39. Defendants provided Plaintiffs with email addresses, and Plaintiffs were encouraged or required to use a signature that identified Plaintiffs as agents of the Defendants.

40. Defendants determined what insurance policies the Plaintiffs and similarly situated agents could sell. Defendants decided what policies they would offer and underwrite.

41. Defendants alone set the price of insurance policies sold by Plaintiffs and the similarly situated insurance agents.

42. Defendants controlled the substantive content of all advertising done on behalf of Texas Farm Bureau. Plaintiffs who wished to advertise had to have their advertisements approved by Defendants.

43. Defendants solely controlled the placement of policies whose commissions represented the entirety of the Plaintiffs' and similarly situated agents' incomes. Defendants could remove a policy from one agent and give it to another, thereby assigning the commission from the first agent and giving it to the second.

44. Defendants required the Plaintiffs and similarly situated insurance agents to attend meetings and training sessions.

45. Defendants' investment in infrastructure designed to underwrite, administer, and pay claims of the insurance products sold by Plaintiffs far exceeded any investment by the Plaintiffs.

46. Plaintiff English has worked for the Defendants for over two years, Plaintiff

Hawley worked for Defendants for over four years, and Plaintiff Broussard has worked for Defendants for over a decade. Plaintiffs are aware of other similarly situated employees who worked for Defendants for years and even decades.

47. Plaintiffs and other misclassified agents routinely worked over 40 hours in a week. Typically, Plaintiffs and similarly situated agents were required to sell insurance out of Defendants' branch locations during business hours for roughly 40 hours a week. Then outside of branch business hours, Plaintiffs and similarly situated agents were required to meet with current policyholders for hours to review their policies and ensure that the policyholders' desired coverage levels were up to date. Also Plaintiffs and similarly situated agents were required to perform other work outside of branch business hours, like photographing the properties of new policyholders while their policies were in underwriting.

48. Plaintiffs have first-hand personal knowledge of Defendants' pay violations.

49. Plaintiffs were nonexempt employees of Defendants.

50. The insurance agents who work for Defendants are compensated exclusively through commissions and are not paid any base salary. They do not have a predetermined, guaranteed minimum pay per week. Some agents, like Hawley, chose to participate in a limited-time financing plan offered to brand-new agents only that offset the risks of commission work, but agents could be on the plan for at most a year and many agents, like Hawley, participated in it for mere months.

51. Defendants failed to make payroll tax or other withholdings from the commissions paid to Plaintiffs and other similarly situated insurance agents.

52. Defendants illegally classified their insurance agents as independent contractors.

10

But at all times, the insurance agents were employees of Defendants as that term is defined by the FLSA and relevant case law.

53. Defendants controlled the hiring, firing, assignment or reassignment, and commission rates of the Plaintiffs and similarly situated insurance agents.

54. Defendants closely monitored and effectively set the work schedule for the Plaintiffs and similarly situated insurance agents.

55. Defendants disciplined insurance agents for not following company rules.

56. Defendants tracked the time and days the insurance agents worked, as is common for typical employer–employee relationships.

57. In addition, Defendants instructed the insurance agents about when, where, and how the insurance agents were to perform their work.

58. The following facts, among others described above, further demonstrate the insurance agents' status as employees:

   a) Defendants had the sole right to hire and fire the insurance agents;
   b) Defendants and Plaintiffs contemplated that Plaintiffs' employment would not be temporary but rather long and indefinite in length;
   c) In fact, the tenure of each of the named Plaintiffs was over a year, and one was thirteen years;
   d) Defendants provided the physical facilities and requirements of the work, including front-office staff, office equipment, computers, and the buildings in which Plaintiffs and similarly situated agents were employed;
   e) Defendants, not Plaintiffs or other misclassified agents, determined the

location of the branch offices at which agents worked;

f) Plaintiffs and other misclassified agents, could not through their own managerial skill, have a substantial impact on the profit and loss earned by them;

g) Defendants, not Plaintiffs or other misclassified agents, set prices for the insurance products and services sold by the agents;

h) Defendants, not Plaintiffs or other misclassified agents, controlled the advertising and marketing of the insurance services and products sold by the agents;

i) Customers of the Defendants made payments directly to Defendants for purchased services and products, not to Plaintiffs or other agents;

j) Defendants set Plaintiffs and other agents a specific schedule, requiring daily work within set hours as well as additional work outside of the normal office hours;

k) Plaintiffs and other agents were expected to not leave the Defendants' premises during the normal work day. They were so strongly discouraged from leaving that if they did, they received calls and e-mails not only questioning them about where they were and what they were doing but also insisting that they return to work;

l) Defendants closely monitored, micromanaged, and effectively exercised control over the scheduling of Plaintiffs and other agents, both in terms of hours worked, and in terms of vacation and other planned time off;

    m) Defendants contractually prohibited Plaintiffs from selling insurance for other companies during their employment;

    n) Defendants, not Plaintiffs or other misclassified agents, provided the main capital investments in the business;

    o) Defendants provided Plaintiffs and insurance agents with company email addresses and business cards;

    p) Plaintiffs and similarly situated insurance agents were supervised by other employees of Defendants; and

    q) Plaintiffs and similarly situated insurance agents were subject to noncompete agreements that could bar them from selling insurance within 50 miles of their stationed Texas Farm Bureau branch for two years following their termination of employment for Defendants with certain exceptions.

59. Defendants misclassified Plaintiffs and other similarly situated insurance agents as independent contractors to avoid their obligations to pay Plaintiffs and similarly situated insurance agents pursuant to the FLSA.

60. Plaintiffs and the similarly situated insurance agents are not exempt from the overtime and minimum wage requirements under the FLSA.

61. Although Plaintiffs were required to and did in fact frequently work more than 40 hours per workweek, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of 40 per workweek.

## VIOLATION OF 29 U.S.C. § 207

62. Plaintiffs incorporate all allegations contained in this pleading.

63. Defendants' practice of failing to pay Plaintiffs time-and-a-half rate for hours in excess of 40 per workweek violates the FLSA. *See* 29 U.S.C. § 207.

64. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to the Defendants or Plaintiffs.

## VIOLATION OF 29 U.S.C § 211(c)

65. Plaintiffs incorporate all allegations contained in this pleading.

66. Defendants failed to keep adequate records of Plaintiffs' work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c).

67. Federal law mandates that an employer is required to keep for three years all payroll records and other records containing, among other things, the following information:

    a. The time of day and day of week on which the employees' work week begins;

    b. The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

    c. An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    d. The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

  e. The hours worked each workday and total hours worked each workweek;

  f. The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

  g. The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

  h. The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

  i. The dates, amounts, and nature of the items which make up the total additions and deductions;

  j. The total wages paid each pay period; and

  k. The date of payment and the pay period covered by payment.

*See* 29 C.F.R. §§ 516.2, 516.5.

  68. Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and producing sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

## WILLFULLNESS

69. Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that their conduct complied with the FLSA.

70. Defendants were aware of the FLSA's requirement that "all non-exempt employees be paid 'time and a half' their regular rate of pay for all hours worked in excess of 40 hours in a seven-day week" as evidenced by a 2014 PowerPoint presentation given to Agency Managers by Defendants.

71. Defendants were aware of the specific job duties of the insurance agents, and were aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

72. Defendants willfully misclassified Plaintiffs' positions as exempt.

## COLLECTIVE-ACTION ALLEGATIONS

73. Plaintiffs adopt by reference all of the facts set forth in this pleading.

74. On information and belief, other employees have been victimized by Defendants' violations of the FLSA as identified above and throughout this pleading.

75. These employees are similarly situated to Plaintiffs because, during the relevant time period, they held similar positions, were compensated in a similar manner, and were denied overtime wages at one and one-half times their regular rates for hours worked over 40 in a workweek.

76. Defendants' policy or practice of failing to pay overtime compensation is a generally applicable policy or practice and does not depend on the personal circumstances of the putative class members.

77. Since, on information and belief, Plaintiffs' experiences are typical of the experiences of the putative class members, collective-action treatment is appropriate.

78. All employees of Defendants, regardless of their rates of pay, who were paid at a rate of less than one and one-half times the regular rates at which they were employed for the hours that they worked over 40 in a workweek are similarly situated. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts. The Class is therefore properly defined as:

> All current or former insurance agents who were classified by Defendants as independent contractors and who were not paid overtime for the hours they worked in excess of 40 hours per week and who worked at any time for any of the Defendants between November 17, 2014 and the present.

79. Defendants are liable to Plaintiffs and the putative class members for the difference between what Defendants actually paid them and what Defendants were legally obligated to pay them.

80. Because Defendants knew or showed a reckless disregard for whether their pay practices violated the FLSA, Defendants owe Plaintiffs and the other putative class members their unpaid overtime wages for at least the last three years.

81. Defendants are liable to Plaintiffs and the other putative class members in an amount equal to their unpaid overtime wages as liquidated damages.

82. Defendants are liable to Plaintiffs and the other putative class members for their reasonable attorneys' fees and costs.

83. Plaintiffs have retained counsel who are well versed in FLSA collective-action litigation and who are prepared to litigate this matter vigorously on behalf of them and all other putative class members.

## DAMAGES AND ATTORNEY'S FEES SOUGHT

84. Plaintiffs are entitled to recover their unpaid overtime compensation.

85. Plaintiffs are also entitled to an amount equal to all of their unpaid wages as liquidated damages. *See* 29 U.S.C. § 216(b).

86. Plaintiffs are entitled to recover their attorney's fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

## JURY DEMAND

87. Plaintiffs hereby demand trial by jury.

## PRAYER

88. For these reasons, Plaintiffs respectfully request that judgment be entered in their favor awarding the following relief:

   a) an order allowing this action to proceed as a collective action under 29 U.S.C. § 216(b);

   b) a judgment awarding Plaintiffs and the other putative class members overtime compensation for all hours worked over 40 in a workweek at the applicable time-and-a-half rate;

c) an equal amount of all owed wages as liquidated damages as allowed under the FLSA;

d) all costs and attorney's fees incurred prosecuting these claims;

e) incentive awards for any class representatives; and

f) such other relief to which Plaintiffs may be entitled, at law or in equity.

Respectfully submitted,

**WILLIAMS KHERKHER HART BOUNDAS, LLP**

By: */s/ John Eddie Williams, Jr.*
John Eddie Williams, Jr. (*Pro Hac* to be filed)
Texas Bar No. 21600300
S.D. Tex. Bar No. 5179
jwilliams@williamskherkher.com
Brian A. Abramson
Texas Bar No. 24050193
S.D. Tex. Bar No. 634741
babramson@williamskherkher.com
Sean M. McCarthy
Texas Bar No. 24065706
S.D. Tex. Bar No. 987779
smccarthy@williamskherkher.com
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone: 713-230-2200
Facsimile: 713-643-6226

**GOFORTH KING MOSHNEBERG LLP**

By: */s/ Daniel O. Goforth*
Daniel O. Goforth
Texas Bar No.: 08064000
S.D. Tex. Bar No: 8117
dangoforth@goforthlaw.com
Ryan D. King
Texas Bar No.: 24073263
S.D. Tex. Bar No: 1114926
ryanking@goforthlaw.com
Avi Moshenberg

19

Texas Bar No.: 24083532
S.D. Tex. Bar No: 1882064
avimoshenberg@goforthlaw.com
1900 Pennzoil South Tower
711 Louisiana Street
Houston, Texas  77002
Tel:    (713) 650-0022
Fax:    (713) 650-1669

**WYLY & COOK, PLLC**

By:    /s/ *Kelly E. Cook*
Kelly E. Cook
kcook@wylycooklaw.com
State Bar No. 24062675
S.D. Tex. Bar No: 1022069
Warren A. Berlanga
wberlanga@wylycooklaw.com
State Bar No. 24085199
S.D. Tex. Bar No: 2611869
4101 Washington Ave. 2nd Floor
Houston, TX 77007
Telephone: (713) 236-8330
Facsimile: (713) 863-8502

**ATTORNEYS FOR PLAINTIFFS**