IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISON

FILED

MAR 29 2019

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| HEATHER ENGLISH, et al. §<br>*Plaintiff,* §<br>§<br>§<br>§<br>**v.** §<br>§<br>**TEXAS FARM BUREAU** §<br>**BUSINESS CORPORATION,** §<br>**TEXAS FARM BUREAU** §<br>**CASUALTY INSURANCE** §<br>**COMPANY, TEXAS FARM** §<br>**BUREAU MUTUAL INSURANCE** §<br>**COMPANY, TEXAS FARM** §<br>**BUREAU UNDERWRITERS,** §<br>**FARM BUREAU COUNTY** §<br>**MUTUAL INSURANCE COMPANY** §<br>**OF TEXAS, SOUTHERN FARM** §<br>**BUREAU LIFE, INSURANCE** §<br>**COMPANY, and TEXAS FARM** §<br>**BUREAU,** §<br>*Defendants* § | CIVIL ACTION NO. 6:17-CV-00323 |

## ORDER GRANTING MOTION TO CERTIFY CLASS AS AN
## FLSA COLLECTIVE ACTION

Before the Court is Plaintiffs' Motion to Certify Class as an FLSA Collective Action

and for Court-Authorized Notice (Dkt. 68), filed August 14, 2018.    Defendant

Southern Farm Bureau Life Insurance Company ("SFB Life" or "SFB") filed a

Response (Dkt. 80) on October 4, 2018.  On October 9, 2018, the Texas Farm Bureau

Defendants[1] ("TFB") filed a Response (Dkt. 85).  On November 19, 2018, Plaintiffs

---

[1] The Texas Farm Bureau Defendants include Texas Farm Bureau Casualty Insurance Company,
Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, and Farm
Bureau County Mutual Insurance Company of Texas.

filed a Reply (Dkt. 91). The Texas Farm Bureau Defendants and Defendant SFB Life (collectively "Defendants") filed a Motion to Strike or, in the Alternative, to Modify Plaintiffs' Proposed Notice and Notice Plan (Dkt. 81) on October 4, 2018. In response, Plaintiffs withdrew their original notice plan and have proposed a Supplemental Notice Plan (Dkt. 89), filed November 19, 2018. Defendants filed a Reply in support of their Motion to Strike (Dkt. 98) on December 6, 2018. Oral argument was heard December 13, 2018. After considering the instant motions, the responses and replies, the record in this case, and the applicable law, the Court is of the opinion that Plaintiffs' motion should be, and is hereby, **granted**.

## I. BACKGROUND

Plaintiffs Heather English, Joe Hawley, and Robin Broussard, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), filed this suit to recover unpaid back wages pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA"). *See* Am. Compl. ¶¶ 1–4 (Dkt. 39). Plaintiffs allege that Defendants have violated the FLSA by misclassifying their insurance agents as independent contractors and not paying them for overtime hours worked. *Id.* Specifically, Plaintiffs allege that Defendants required or permitted Heather English, Joe Hawley, Robin Broussard, and other similarly situated employees "to work as insurance agents in excess of 40 hours per week but refused to compensate them at the overtime rates." *Id.* ¶ 1. Plaintiffs further contend that:

> Plaintiffs and other similarly situated insurance agents were not paid any base salary; instead, they were paid exclusively commissions, without any predetermined guaranteed minimum pay per week, and regardless of the number of hours worked. Some agents, like Hawley, chose to participate in

a limited-time financing plan offered to brand-new agents only that offset the risks of commission work, but agents could be on the plan for at most a year and many agents, like Hawley, participated in it for mere months. Defendants did not pay Plaintiffs or other similarly situated insurance agents an overtime premium for hours worked in excess of 40 in a week.

*Id.* ¶ 2.

Pursuant to this action, on August 14, 2018, Plaintiffs filed a Motion for Conditional Certification as an FLSA Collective Action and for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (hereinafter "Motion for Conditional Certification," "Plaintiffs' Motion," or "Motion"). Plaintiffs seek to bring a collective action to recover the unpaid wages owed them and all other similarly situated insurance agents, current and former, of Defendants who worked for any of the Defendants at any time during the three-year period before this Complaint was filed up to the present. Plaintiffs allege that other employees are similarly situated to Plaintiffs because, during the relevant time period, they held similar positions, were compensated in a similar manner, and were denied overtime wages at one and one-half times their regular rates for hours worked over forty in a workweek. Plaintiffs allege that Defendants' failure to pay overtime is a generally applicable policy or practice and does not depend on the personal circumstances of the putative class members. Plaintiffs further allege that their experiences are typical of the experiences of the putative class members, that collective-action treatment is appropriate, and that all employees of Defendants, regardless of their rates of pay, who were paid at a rate of less than one and one-half times the regular rates at which they were employed for the hours that they worked over forty in a workweek are

similarly situated.  Plaintiffs acknowledge that while the issue of damages may be individual in character, there is still a common nucleus of liability facts.  Plaintiffs contend that these putative class members should therefore be informed of the pendency of this action and apprised of their right to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), and its progeny.

The Court has already resolved a similar issue in a substantially related case involving the same defendants and similar allegations.  That case is styled: *Ferguson v. Texas Farm Bureau, et al.*, 6:17-cv-00111-ADA.  In *Ferguson*, this Court granted conditional certification of a class of agency managers who recruited, managed, and directly supervised the agents who are the plaintiffs in this litigation.  2018 WL 1392704, at *1 (W.D. Tex. Mar. 20, 2018).  The *Ferguson* plaintiffs also claim that Defendants misclassified them as independent contractors and paid them based solely on commissions without an overtime premium for hours worked in excess of forty in a workweek.  This Court found that the agency managers satisfied the requirements for conditional certification under the *Lusardi* approach recognized by the Fifth Circuit and used by this Court.  *Id.* (citing *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 512 (W.D. Tex. 2015) (observing that the majority of courts in the Fifth Circuit use the *Lusardi* approach to determine FLSA class certification)).

Plaintiffs rely heavily—and justifiably—on this Court's determination in *Ferguson*, noting that the agents who are Plaintiffs in this case worked directly under agency managers who are the plaintiffs in *Ferguson*.  Plaintiffs in this case allege that their primary duties were the selling of Defendants' insurance products and the

4

servicing of Defendants' policyholders. They stress that these job duties did not vary based on the location or region where a specific agent worked. Plaintiffs note that over twenty agents have opted into this litigation already and that there are over 750 potential opt-in plaintiffs. Pls.' Mot. 30–31 (Dkt. 68). Defendants see this quite differently, emphasizing that the number of current opt-ins is quite small given the total number of potential plaintiffs. *See* TFB Defs.' Resp. 5 (Dkt. 85) (arguing that "the current opt-in rate—2% of the potential class, nearly a year after filing— indicates little interest among class members"). In addition, Defendants filed motions for summary judgment in an effort to establish that many plaintiffs in this case are not qualified to be part of this class.[2] *See id.* at 8 (asserting that "Defendants' summary judgment motion destroys any assertion of a class-wide grievance"); Defs.' Mots. for Summ. J. (Dkts. 75, 76, 84).

In their Response to Plaintiffs' Motion, the Texas Farm Bureau Defendants argue that the agents were properly classified as independent contractors; that Plaintiffs are subject to the "outside sales" exemption; that an individualized analysis of the facts respective to each putative plaintiff would be required, which would defeat the purpose of certification; that agents are, in general, high-earning individuals, and therefore are not the sort of plaintiffs for whose protection the FLSA was enacted; and that there is little interest in the case among the putative class members. TFB Defs.' Resp. 4–5 (Dkt. 85). Defendant SFB Life urges similar and additional arguments in a separate Response ("SFB Life's Response"). SFB Life argues that the

---

[2] Defendants' Motions for Summary Judgment have been denied without prejudice in a separate order, filed March 27, 2019. Order Den. Mots. Summ. J. (Dkt. 109).

Court should apply a more rigorous standard than that entailed by the *Lusardi* notice stage, *see* SFB Life's Resp. 13–16 (Dkt. 80); that the Court should deny certification because Plaintiffs cannot meet such a standard in light of the record evidence currently available, *see id.* at 14–17; and that the Court should deny Plaintiffs' request for certification because Plaintiffs fail to establish that the members of the proposed class are similarly situated, *see id.* at 18–20.

Defendants have also objected to Plaintiffs' proposed notice and notice plan. In their Motion to Strike or, in the Alternative, to Modify Plaintiffs' Proposed Notice and Notice Plan ("Motion to Strike") argues that Plaintiffs' proposed call script should be rejected and Plaintiffs' counsel precluded from unilaterally calling potential class members, *see* Mot. to Strike 2–5 (Dkt. 81); that the proposed reminder notice is misleading and invites unscripted communications with class members, *see id.* at 5–7; and that Plaintiffs' proposed notice lacks neutrality and omits critical information, such as the Defendants' defenses and bases for denying liability and the potential allocation of costs, *see id.* at 7–8.

## II. LEGAL STANDARD

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of forty hours per week. 29 U.S.C. § 207(a) (2012). This action is brought under 29 U.S.C. § 216(b). Because it is like a class action, the action may be brought by one or more employees for and on behalf of herself and others similarly situated. 29 U.S.C. § 216(b). Section 216(b) creates a cause of action against employers who violate the overtime

compensation requirements. *Id.* Section 216(b) also permits an employee to bring a collective action lawsuit against an employer on "behalf of himself . . . and other employees similarly situated." *Id.* Employees who wish to participate in a § 216(b) collective action must affirmatively "opt-in" to the action by filing a written consent with the court. *Id.* The "opt-in" procedure of § 216(b) illustrates its "fundamental, irreconcilable difference" from a class action under Federal Rule of Civil Procedure 23(c); in a Rule 23 proceeding, persons within the class description are automatically considered class members and must "opt-out" of the suit if they do not wish to participate. *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

A court can either treat a motion to certify an FLSA collective action as it would a class-action authorization under Federal Rule of Civil Procedure 23, or it may use the *Lusardi* two-step process to determine whether employees are similarly situated and entitled to collective action. *See Shushan v. Univ. of Colo.,* 132 F.R.D. 263 (D. Colo. 1990) (treating FLSA collective action as coextensive of Rule 23); *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987) (authorizing a two-step approach to class certification in FLSA actions). The Fifth Circuit has declined to adopt a specific test to determine when a court should certify a collective action or grant notice in a § 216(b) action, but most federal courts have adopted the *Lusardi* test. *Badgett v. Tex. Taco Cabana, L.P.,* No. H–05–3624, 2006 WL 2934265, at *1–2 (S.D. Tex. Oct. 12, 2006). As Plaintiffs point out, *this* Court uses *Lusardi*, not only because most courts in this Circuit have adopted this standard, but also because the Supreme Court and the Fifth Circuit have implied that Rule 23-type analysis is distinct from—and

7

potentially incompatible with—FLSA collective actions. *Dyson*, 308 F.R.D. at 512; *see Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the Fed. R. Civ. Pro. 23 procedures.").

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009). At the notice stage, the court, usually considering only the pleadings and submitted affidavits, decides whether to certify the class conditionally and give notice to the potential class members. *Id.* The decision is made using a fairly lenient standard because of the dearth of evidence at this early stage of litigation. *Id.* Courts tend to require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy, or plan. *Id.* If the court conditionally certifies the class and authorizes notice, then putative class members are notified of their opportunity to opt-in as plaintiffs under § 216(b). *Id.*

The action then proceeds as a representative action during discovery. *Id.* At the decertification stage, the court reexamines the class, usually on motion by the defendant, after notice has issued, an opt-in period has concluded, and discovery is largely complete. *Id.* If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs

without prejudice. *Id.* If the class is still similarly situated, the court allows the action to proceed. *Id.* A "decision to certify, even if subject to correction at the decertification stage, is not without consequences" as "[t]oo much leniency at the notice stage can lead to a 'frivolous fishing expedition conducted by the plaintiff at the employer's expense'" and "extreme leniency at the notice stage can result in conditional certification that must later be revoked at the eve of trial . . . when it becomes obvious that manageability concerns make collective action impossible." *Lang v. DirecTV, Inc.*, No. 10–1085, 2011 WL 6934607, at *6 (E.D. La. Dec. 30, 2011) (citations omitted). This Court is mindful that even though the notice stage standard is lenient, it is not automatic. *Badgett*, 2006 WL 2934265, at *2.

The case before this Court is at the notice stage. At the notice stage of the *Lusardi* analysis, a plaintiff must provide, through pleadings and sworn statements, substantial allegations that potential class members were subject to a single decision, policy, or plan that violated the FLSA. *Alford v. Freedom Oilfield Servs., LLC*, 5:16-CV-00331-DAE, 2016 WL 8673858, at *1 (W.D. Tex. Aug. 17, 2016), *report and recommendation adopted,* 2016 WL 8673859 (W.D. Tex. Sept. 7, 2016). The plaintiff must make a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. G–07–0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008); *see also Pacheco v. Aldeeb*, 5:14–CV–121–

DAE, 2015 WL 1509570, at *3 (W.D. Tex. Mar. 31, 2015). Regarding the second factor, "the relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." *Kibodeaux v. Wood Grp. Prod.*, No. 4:16-CV-3277, 2017 WL 1956738, at *2 (S.D. Tex. May 11, 2017). The Court "need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Id.* (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 288 (N.D. Tex. 2012)).

As in *Ferguson*, because this District, as well as this Court, specifically adheres to the *Lusardi* approach, this Court should not evaluate any further arguments under any alternative certification framework. Defendants' arguments regarding the validity of the *Lusardi* approach and the application of Rule 23 or any "intermediate" approach to Plaintiffs' Motion are moot.

## III. DISCUSSION

With Defendants' arguments regarding the applicable standard moot, what remains are Defendants' arguments pertaining to conditional certification under the *Lusardi* approach and Defendants' arguments pertaining to the proposed notice and notice plan. These arguments are unavailing.

### A. Plaintiffs Satisfy the Requirements of the *Lusardi* Notice Stage.

As noted, this case is at the *Lusardi* notice stage. Defendants have, for obvious reasons, fought a pitched battle against class certification in order to avoid the extraordinary expense of the extensive discovery that precedes the decertification stage. The Court has taken this concern seriously in assessing the arguments made

by the Parties.  Nevertheless, the Court finds, as it did in *Ferguson*, that several of Defendants' arguments are better suited to the decertification stage.  *See Ferguson*, 2018 WL 1392704, at *3 (finding that Defendants' objections regarding purportedly necessary individualized analyses would be more appropriately considered at the decertification stage).

### 1. Plaintiffs Have Shown That There Are Aggrieved Individuals That Are "Similarly Situated" for Purposes of the FLSA.

At the notice stage, Plaintiffs are only required to make a "modest factual showing" that they are "similarly situated" to other employees in the putative class. *Burns v. Chesapeake Energy, Inc.*, No. SA-15-CV-1016-RP, 2017 WL 1842937, at *4 (W.D. Tex. Mar. 14, 2017) (quoting *Vargas v. HEB Grocery Co., LP*, No. SA–12–CV–116–XR, 2012 WL 4098996, at *2 (W.D. Tex. Sept. 17, 2012)), *report and recommendation rejected on other grounds*, 2018 WL 4691616 (W.D. Tex. Sept. 28, 2018).  Plaintiffs only need to be "similarly situated 'in relevant respects given the claims and defenses asserted.'" *Id.* (quoting *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010)); *see Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15–CV–330–RP, 2015 WL 7075971, at * 3 (W.D. Tex. Oct. 5, 2015) ("[T]he question before the Court is whether the differences between class members demonstrated by Defendant are relevant to the claims made by Plaintiffs."). "In wage and hour cases, this means the proposed class must be 'similarly situated in terms of job requirement and similarly situated in terms of payment provisions.'" *Mathis v. Stuart Petroleum Testers, Inc.*, No. 5:16–CV–094–RP, 2016 WL 4533271, at *2 (W.D. Tex. Aug. 29, 2016) (citing *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d

11

693, 698 (W.D. Tex. 2009)). Thus, the relevant inquiry for the Court is whether the putative class members "performed the same basic tasks as part of their employment and were subject to the same pay decisions, policies, or practices." *Id.* That these agents may differ in the amount of off-the-clock work that they perform would not itself be a reason to deny a conditional class certification. *See, e.g., Maynor*, 2008 WL 2220394, at *9 (collecting sources and stating, "[m]ost courts have held that in unpaid overtime 'off-the-clock' cases, the need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated"). Employees need not be similarly situated in all aspects of employment, but there must be identifiable facts or a legal nexus binding together the claims so that hearing the cases together promotes judicial efficiency.

In this case, Plaintiffs have submitted their own declarations and the declarations of over twenty opt-in plaintiffs, in addition to the allegations in their Complaint. The evidence discussed throughout establishes that Defendants' agents had similar job duties, that they regularly worked more than forty hours per week, and that Defendants required that they work off-the-clock. During the time that exceeded forty hours, Plaintiffs and putative class members performed tasks—aiding policyholders with the filing of insurance claims, processing premium payments, providing insurance information, updating policies, photographing properties, meeting with current and potential customers, handling incoming calls, etc., *see* Pls.' Mot. 9–10 (Dkt. 68); *id.* Exs. A–X ¶ 9—that were compensable under the FLSA because they were an "integral and indispensable" part of the agents' principal activities. Therefore, Plaintiffs have put forward evidence that a group of agents had similar job duties, were paid in the same

manner, and were together subjected to an illegal payment scheme under the FLSA. Plaintiffs have met their lenient burden.

The Court finds that Plaintiffs have demonstrated that they are similarly situated as to both their job requirements and payment provisions. The essence of Plaintiffs' allegations is that the putative class of agents was subject to Defendants' policy of classifying these agents as independent contractors in order to "avoid paying them overtime and to save costs on other employment related matters. . . ." *Id.* at 14; *see id.* Exs. A–X ¶ 4. Plaintiffs have provided the Complaint and twenty-four declarations, in addition to other exhibits, to support their allegations that all agents in Texas are subject to these pay practices.[3] Each of these declarations confirms that agents are classified as independent contractors, paid solely based on commission, and regularly work more than forty hours per work week without being paid overtime. Likewise, the affidavits support the allegation that the independent-contractor classification—and the failure to pay overtime—is a company-wide policy.

Plaintiffs have also demonstrated that the putative class members are "similarly situated" with respect to their job requirements. *See Mathis*, 2016 WL 4533271, at *2. It is well-established that "similarly situated" does not mean

---

[3] Such declarations are a sufficient basis for class certification at the *Lusardi* notice stage. *See, e.g., Nabarrette v. Propetro Servs., Inc.*, MO:15-CV-00211-RAJ, 2016 WL 7616717, at *3 (W.D. Tex. Apr. 4, 2016) (finding plaintiff's declaration sufficient to support conditional certification); *Burns*, 2017 WL 1842937, at *4–5 (finding two declarations from two named plaintiffs sufficient); *Dyson*, 308 F.R.D. at 513 (finding declarations of the single named plaintiff and one co-worker sufficient); *Alford*, 2016 WL 8673858 at *3 (finding two declarations sufficient); *Pacheco*, 2015 WL 1509570, at *8 (finding two declarations attesting "many" current and former employees would join lawsuit sufficient basis for conditional certification); *Tolentino*, 716 F. Supp. 2d at 652 (finding two declarations of similarly situated individuals and the complaint sufficient to demonstrate the existence of employees who would opt in); *Reid v. Timeless Rests., Inc.*, 2010 WL 4627873, at *3 (N.D. Tex. Nov. 5, 2010) (finding "evidence from two individuals who experienced similar employment pay practices . . . and [who] stated that they are aware of others who also experienced them" sufficient to support conditional certification).

*identical* at the notice stage of conditional certification. *Burns*, 2017 WL 1842937, at *4 (citing *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 470 (S.D. Tex. 2012) (finding that crane operators and roughnecks/riggers were similarly situated, despite different job responsibilities, because both worked at the same facility and were subject to the same policy of not being paid overtime)). As noted above, Plaintiffs' primary job duties were the selling of insurance policies and the servicing of policyholders. For example, agents fielded calls, generated insurance quotes, photographed properties, and conducted "member reviews." Defendants argue that—inasmuch as it occurred at all—much of this activity falls under the "outside sales" exemption; moreover, Defendants argue that the agents' "flexible" schedules, and the consequent idiosyncrasy of their actual respective employment activities, precludes any finding that they were similarly situated.

In summary, Plaintiffs' proffered declarations indicate that their job requirements were to sell insurance policies and provide services to policyholders. The Court is not persuaded by Defendants' argument that, as an initial matter, the agents' job duties defy any characterization as "similarly situated". Rather, Plaintiffs describe similar primary duties from office to office by agents company-wide. These allegations and supporting documentation convince the Court that Plaintiffs, as agents, were similarly situated for purposes of conditionally certifying this case as a collective action. The Court finds that Plaintiffs have made the required "modest factual showing" that they are similarly situated at this preliminary stage of the litigation. *See Vargas*, 2012 WL 4098996, at *2. If at any point during discovery it

becomes apparent that Plaintiffs' job requirements and pay provisions are indeed significantly dissimilar, Defendants may file a motion to decertify the conditional class. *See Hernandez*, 191 F. Supp. 3d at 680.

### 2. Plaintiffs have sufficiently demonstrated that others are interested in joining this suit.

Although it is neither required by the statute nor by the greater weight of recent caselaw,[4] Plaintiffs and the twenty-three opt-in plaintiffs believe that many other agents—more than 750—would join this action were they given notice of their right to do so. Plaintiffs need only demonstrate that there are other agents "who may desire to 'opt-in.'" *Clark v. City of Fort Worth*, 800 F. Supp. 2d 776, 780 (N.D. Tex. 2011). Since the filing of this lawsuit in November 2017, over twenty additional Plaintiffs have consented to join, including active agents. Pls.' Mot. 5–6 (Dkt. 68) (citing Dkts. 13, 14, 16, 47, 56–63, 65). Additionally, Plaintiffs have represented to the Court that over 750 agents who worked for Defendants are potential opt-in plaintiffs in this suit. *Id.* at 6; *see id.* Ex. Z-24 (stating that Defendants have over 750 multiline agents). Plaintiffs have met their burden of showing there are other aggrieved individuals who would opt-in to this suit.

---

[4] *See Vega v. Point Sec., LLC*, A-17-CV-049-LY, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) (collecting sources and concluding that the plaintiff need not meet this element); *Contreras, et al. v. Land Restoration LLC, et al.*, 1:16-CV-883-RP, 2017 WL 663560, at *7 (W.D. Tex. Feb. 17, 2017) ("This court . . . finds that Plaintiffs need not specifically show that other aggrieved individuals desire to opt in. Requiring Plaintiffs to identify and obtain preliminary support from potential class members is 'putting the cart before the horse.'"); *see also Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. CIV.A. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008); *Black v. SettlePou, P.C.*, 3:10-CV-1418-K, 2011 WL 609884, at *3 (N.D. Tex. Feb. 14, 2011); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011) (granting a motion for notice where the plaintiffs specifically identified just one potential plaintiff).

As noted above, Defendants argue here, as they did in *Ferguson*, that this case is inappropriate for collective treatment, and thus should not be conditionally certified, because it will require individualized determinations regarding whether agents were misclassified as independent contractors—a determination that would require application of the economic realities test—and whether agents qualify for the outside sales exemption. TFB Defs.' Resp. 12–14 (Dkt. 85). However, Defendants' argument would, in effect, preclude conditional certification of any case alleging employee misclassification, which would be at odds with previous decisions in the Fifth Circuit. *See Walker*, 870 F. Supp. 2d at 470–71 (disapproving application of the economic realities test at the notice stage but nonetheless finding that the plaintiffs had provided sufficient evidence—"albeit minimal"—that they were similarly situated under that test).

Defendants are correct that, to determine whether an employer has properly classified a worker as an independent contractor, courts in Fifth Circuit

> generally use as a guide five, non-exclusive factors: (a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer.

*Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (quoting *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010)) (internal quotations omitted). However, courts are not of one mind regarding the extent to which the economic realities analysis applies at the *Lusardi* notice stage.

*Tamez*, 2015 WL 7075971, at *5.[5] Many courts have held "that the economic-realities

test should not be utilized at all when determining whether to conditionally certify

an FLSA action concerning an allegedly wrongful independent-contractor

designation, because it is a merits-based determination." *Burns*, 2017 WL 1842937,

at *7–8 (citing *Walker*, 870 F. Supp. 2d at 470–71 (collecting cases)).

---

[5] As discussed by Judge Pitman in *Tamez*:

> Courts are split as to whether the economic realities test should be utilized when
> determining whether to conditionally certify a class in an FLSA action concerning an
> allegedly wrongful independent contractor designation. *See generally Walker*, F. Supp.
> 2d at 470–71 (citing divergent cases).  Some courts have held that the economic
> realities inquiry is only appropriate at the decertification stage. *See, e.g., Gonzalez v.
> Tier One Sec., Inc.*, No. SA–12–CV–806–XR, 2013 WL 1455587, at *2 (W.D.Tex. Apr.8,
> 2013) ("Defendants' argument that their classification of the [plaintiffs] as
> independent contractors (and not employees) wholly dictates that conditional
> certification is inappropriate is without merit."); *Jones v. JGC Dallas LLC*, No. 3:11–
> CV–2743–O, 2012 WL 6928101, at *4 (N.D.Tex. Nov.29, 2012) ("Defendants argue that
> this case is not appropriate for adjudication as a collective action because Plaintiffs
> cannot demonstrate the requisite employer/employee relationship. This is a merits-
> based argument, and courts are not to engage in merits-based analysis at the notice
> stage of a collective action."); *Walker*, 870 F.Supp.2d at 471 ("The Court believes that
> the economic factors test is likely not appropriate for determination at the first stage
> of FLSA class certification."). Other courts have held that the economic realities test
> ought to inform the assessment of whether class members are similar enough to warrant
> conditional certification. *See, e.g., Christianson v. NewPark Drilling Fluids,
> LLC*, No. CIV.A. H–14–3235, 2015 WL 1268259, at *4 (S.D.Tex. Mar.19, 2015) (holding
> that conditional certification requires members of the putative class to be "similarly
> situated for purposes of applying the economic realities test at the appropriate phase
> of [the] case in the future"); *Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287,
> 289 (S.D.Tex.2012) (quoting *Bamgbose v. Delta–T Grp., Inc.*, 684 F.Supp.2d 660, 668
> (E.D.Pa.2010)) (holding that "a court 'must analyze whether the [putative collective
> action members] are similarly situated with respect to the analysis it would engage in
> to determine whether the workers are employees or independent contractors.'").

2015 WL 7075971, at *5. *Tamez* elected not to resolve whether to apply the economic realities
test at the notice stage, deciding instead that, "[a]fter looking to the allegations and
evidentiary support provided by Plaintiffs, the Court finds that there is sufficient reason to
believe that the members of the putative class are likely to share a common employment status
and that accordingly the economic realities test can be applied 'to the class as a whole.'" *Id.*
In light of Plaintiffs' allegations and supporting declarations in this case, this Court finds
*Tamez* instructive and persuasive.

Notwithstanding the divergence in judicial decision regarding application of the economic realities test at the notice stage, the Court finds that Plaintiffs have presented some evidence that members of the putative class are similarly situated with regard to the economic realities test. *See Tamez*, 2015 WL 7075971, at *6 (finding certification appropriate where the plaintiffs had provided "some evidence" of similar situation with respect to the economic realities test). Plaintiffs have submitted to the Court that the all opt-in plaintiffs have worked for Defendants for over ten months; that Defendants control most aspects of agents' work; that Defendants train agents in the skills necessary to perform their jobs; that agents work under the infrastructure that Defendants built; and that agents work exclusively for Defendants. *See* Pls.' Mot. 18–25. The Court finds that the testimony of Plaintiffs is adequate at this preliminary stage in the litigation to support their allegations that they were employees of Defendants. *See Andel*, 280 F.R.D. at 290.

In light of the foregoing, the Court **grants** Plaintiffs' motion to conditionally certify the following class:

> All former and current independent contractors of Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, Southern Farm Bureau Life Insurance Company, and Texas Farm Bureau, who within the past three years have worked in the position of insurance agent in the State of Texas.

## B. Proposed Notice

By their Motion, Plaintiffs ask the Court to order Defendants to produce proposed class members' names, last-known addresses, e-mail addresses, and if a class member's current e-mail address cannot be provided, telephone numbers. Pls.'

Mot. Suppl. 26, Ex. AA–CC (Dkt. 68); Pls.' Proposed Suppl. Notice (Dkt. 89). Additionally, Plaintiffs request Reminder forms to be sent 25 days before close of the 60-day opt-in window and a call script to ensure receipt of the notice materials. *Id.* Defendants object that the proposed notice is misleading and lacks neutrality, that the proposed reminder notice is still misleading and encourages participation by class members, and that corrective notice is not warranted. Defs.' Reply 2–4, 5–8 (Dkt. 98).

The supplemental notice plan provide by Plaintiffs adheres closely to the notice plan approved after careful and persuasive consideration by Judge Manske and Judge Pittman in *Ferguson. Compare* Pls.' Proposed Suppl. Notice Ex. A–C (Dkt. 89) *with Ferguson v. Tex. Farm. Bureau Bus. Corp., et al.,* 6:17-CV-00111, 2017 WL 7053928 (W.D. Tex. Dec. 11, 2017), *report and recommendation adopted,* 2018 WL 1392704. Defendants provide no persuasive rationale for the Court to deviate from that notice plan in the present case, and accordingly, the Court **approves** it.

## IV.   CONCLUSION

For the foregoing reasons, it is accordingly

**ORDERED** that the following class is conditionally certified for purposes of providing notice to potential class members and allowing potential class members to opt-in to this suit:

> All former and current independent contractors of Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, Southern Farm Bureau Life Insurance Company, and Texas Farm Bureau, who within the past three years have worked in the position of insurance agent in the State of Texas.

**IT IS FURTHER ORDERED** that Plaintiffs' proposed supplemental notice ("Notice") (Dkt. 89, Ex. A) and reminder notice ("Reminder Notice") (Dkt. 89, Ex. C) are **APPROVED.**

**IT IS FURTHER ORDERED** that within **fourteen days** of the date of this order, Defendants must provide Plaintiffs' counsel with the full name, last known address, and e-mail address of each Class member.  If Defendants cannot provide a Class member's current e-mail address, they must provide a current telephone number.

**IT IS FURTHER ORDERED** that Plaintiffs' proposed call script ("Call Script"), (Dkt. 89, Ex. B) is **APPROVED.**  Plaintiffs' counsel is authorized to contact by telephone any Class member for whom no e-mail address is provided by Defendants, but may do so only once and must strictly adhere to the Call Script.

**IT IS FURTHER ORDERED** that after Defendants have complied with their obligation to provide Plaintiffs' counsel with contact information, Plaintiffs' counsel must send the approved Notice form to all identified Class members by first-class mail and email (where available) within ten days. Plaintiffs' counsel shall notify the Court once delivery of the Notice is complete.

**IT IS FURTHER ORDERED** that Class members may opt in to this collective action only if: (1) they have mailed, faxed, or e-mailed their Consent Form to Plaintiffs' counsel within **sixty days** after the Notice and Consent Forms are transmitted by Plaintiffs' counsel; or (2) they show good cause for delay.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel may send the approved Reminder Notice by first class mail and e-mail (if available) to any Class member who has not already returned his or her consent form by the twenty-fifth day before the close of the sixty-day opt-in window.

**IT IS FURTHER ORDERED that** within **thirty days** of the date of this order, the parties shall submit to the Court a joint proposed scheduling order for the completion of discovery.  The joint proposed order will include any discovery deadlines, a briefing schedule for Defendants' motion(s) to decertify the class, and, if necessary, a hearing on the decertification motion(s).

**SIGNED** on this the 29th day of March 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE