# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **HEATHER ENGLISH, JOE HAWLEY, and ROBIN BROUSSARD** § § § | |
| **Plaintiffs,** § § | |
| v. § § | **CASE NO. 6:17-CV-00323-ADA-JCM** |
| **TEXAS FARM BUREAU BUSINESS CORPORATION, TEXAS FARM BUREAU CASUALTY INSURANCE COMPANY, TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, TEXAS FARM BUREAU UNDERWRITERS, FARM BUREAU COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, SOUTHERN FARM BUREAU LIFE, INSURANCE COMPANY, and TEXAS FARM BUREAU,** § § § § § § § § § § § § | |
| **Defendants.** § § | |

## ORDER

Came for consideration the above-captioned matter. Before the Court are Defendants Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, and Farm Bureau County Mutual Insurance Company of Texas's (hereafter, collectively, "the Texas Farm Bureau Defendants") Motion to Compel Tax Returns from Plaintiffs (hereafter "Motion to Compel," ECF No. 162), Defendants' Joint Motion for Discovery Plan (hereafter "Discovery Plan Motion," ECF No. 163), and the attendant responses and replies pertaining to each Motion. For the reasons stated below, the Court **GRANTS IN PART** Defendants' Motion to Compel and **GRANTS IN PART** Defendants' Joint Motion for Discovery Plan.

# I.
# BACKGROUND

This present case concerns Defendants' alleged under-compensation of a class of individuals pursuant to the FLSA. *See generally* Pl.'s Am. Compl., ECF No. 39. With respect to the Texas Farm Bureau Defendants' Motion to Compel, on November 14, 2019, the Texas Farm Bureau Defendants served their First Set of Class Discovery on Plaintiffs. *See* Mot. to Compel, Ex. B. Request for Production 1 sought "[c]omplete copies of the Consenting Plaintiffs' federal income tax returns for every year in which each Consenting Plaintiff seeks to recover damages in this case, including all schedules and attachments submitted with the tax return for each year (1099s, W-2s, etc.)."

In response, Plaintiffs objected to Request for Production 1, arguing that the Request was 1) unduly burdensome, 2) not reasonably calculated to lead to the discovery of admissible evidence, 3) sought documents more easily accessed by Defendants, and 4) sought "highly sensitive documents" which courts are usually reluctant to order routine production thereof. *See* Mot. to Compel, Ex. C. Thereafter, on March 2, 2020, the Texas Farm Bureau Defendants filed their Motion to Compel. *See id.*

Also on March 2, 2020, Defendants, collectively, filed their Joint Motion for Discovery Plan. *See* Discovery Plan Mot. This Motion seeks the "entry of a discovery plan that would permit full discovery on 46 of the 160 named Plaintiffs and opt-ins…prior to the deadline for the Defendants to file a Motion for Decertification …." *Id.* at 2 (internal parentheses removed). On March 20, 2020, Plaintiffs filed a collective response to both of the Motions. *See* Pls.' Resp. Defendants filed their attendant Replies on April 1, 2020. *See* Reply to Mot. to Compel, ECF No. 172; Reply to Discovery Plan Mot., ECF No. 173.

## II.
## RELEVANT LAW

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Discovery requests must be proportional to case needs, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *Thompson v. Toyota Motor Sales, USA, Inc.,* No. SA-16-CA-00645-DAE, 2017 WL 5244561, at *2 (W.D. Tex. June 6, 2017) (citing *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tex. 2017)).

## III.
## ANALYSIS

The Court will first address the Motion to Compel and then conclude by addressing the Discovery Plan Motion. For the reasons discussed below, both Motions will be **GRANTED IN PART.**

**A. The Farm Bureau Defendants' Motion to Compel Tax Returns**

In their Response to the Motion to Compel, Plaintiffs make the following, unavoidable concession: "Plaintiffs note that this Court ordered the disclosure of the named plaintiff's tax returns in another related case last year, and want to be clear that Plaintiffs are not arguing that tax returns are not discoverable." Pls.' Resp. at 1 (citing *Ferguson v. Texas Farm Bureau Bus. Corp.*,

*et al.,* Case No. 6:17-CV-00111-ADA-JCM, ECF No. 197). With all due respect to Plaintiffs, the Court frankly believes the conversation ends here, full stop.

Plaintiffs' arguments with respect to the tax returns can be boiled down to the following: "tax returns are discoverable in the present matter, but not as to all 140 class members." *See generally* Pls.' Resp. Plaintiffs' divide their tax return objections into three parts: 1) Defendants seek the tax returns to "artificially select" Plaintiffs for the representative sample for the purpose of decertification; 2) Defendants could prove that class members are dissimilar at the decertification stage without the use of tax returns; and 3) tax returns are "devoid" of information regarding hours worked. *Id.* at 7.

Turning to Plaintiffs' first argument, the Court is not clear on how Defendants' motive for seeking Plaintiffs' tax returns should figure into its analysis. The Court is not directed to any legal authority, nor has it independently located any, that suggests a quasi-scienter inquiry is appropriate when assessing the permissible scope of discovery. Beyond that, if the aim of Defendants' request for Plaintiffs' tax returns is to somehow "artificially" mislead the court, Plaintiffs can rest assured that distinctions among class members "must make a difference relevant to the legal issues presented" at the decertification stage. *Roussell v. Brinker Int'l, Inc.,* 441 F. App'x 222, 226–27 (5th Cir. 2011).

Plaintiffs' second argument holds even less merit. The Court already held in *Ferguson* that tax returns are relevant, and therefore discoverable, in the context of an FLSA suit for unpaid overtime. *See Ferguson v. Texas Farm Bureau Bus. Corp.*, *et al.,* Case No. 6:17-CV-00111-ADA-JCM, ECF No. 197. Thus, Plaintiffs must show that Defendants' request is overly broad, or unduly burdensome or oppressive. *Thompson* , 2017 WL 5244561, at *2. Instead, Plaintiffs' argument seemingly invites the Court to revaluate its decision in *Ferguson*; respectfully, the Court declines.

The fact that other methods exist for proving the dissimilarity of the class does not modify the Court's analysis.

Turning to the third argument, that tax returns are "devoid" of information regarding hours worked, the Court's analysis in *Ferguson* also disposes of this argument in short order. "To determine employee status under the Fair Labor Standards Act, we focus on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he or she renders his or her services." *Ferguson,* ECF No. 197 (citing *Herman v. Express Sixty-Minutes Delivery Serv.,* 161 F.3d 299, 303 (5th Cir. 1998)). The Fair Labor Standards Act analysis turns, in part, on whether Plaintiff earned income from outside sources. *Id.* (citing *Canada v. Hotel Dev.-Texas, Ltd.,* No. 3-07-CV-1443-D, 2008 WL 3171940, at *2 (N.D. Tex. July 30, 2008)). "[T]ax returns and the supporting documents . . . are reasonably calculated to obtain such evidence." *Id.* (citing *Canada v. Hotel Dev.-Texas, Ltd.,* No. 3-07-CV-1443-D, 2008 WL 3171940, at *2 (N.D. Tex. July 30, 2008)).

Plaintiffs also gesture towards arguments that ordering the production of the tax returns is not "proportional to the needs of the case" and that such a request is overly burdensome. *See, e.g*. Pls.' Resp at 8, 9. The Court's characterization of Plaintiffs' overly burdensome argument as a gesture is intentional; as the Court explained in *Ferguson*, a party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request. *Ferguson*, ECF No. 197 at 5. Plaintiffs have not provided any such proof. Accordingly, the Court rejects Plaintiff's overly burdensome arguments. The Court, therefore, **GRANTS IN PART** the Farm Bureau Defendants' Motion to Compel the tax returns of the 140 Plaintiffs at issue.[1]

---

[1] In the event that the Court grants Defendants' Motion to Compel, Plaintiffs request that the Court allow Plaintiffs to sign IRS Form 4506-T, which would authorize release of tax transcripts to Defendants. Pls.' Resp. at 11.

**B. Defendants' Discovery Plan Motion**

The Fifth Circuit has never directly addressed the permissible scope of discovery in an FLSA collective action. *See Winkler v. Sunbelt Rentals, Inc.,* No. 3:12-CV-3789-B, 2014 WL 12596498, at *4 (N.D. Tex. July 10, 2014). As illustrated by the briefing of the parties, there is a great degree of variance amongst trial courts in this area. Regardless, the Court is afforded wide discretion when determining a discovery plan best suited to meet the needs of the case. *See Jackson v. Willamette Indus., Inc.*, 992 F.2d 324 (5th Cir. 1993) ("We will afford the district court wide discretion in determining the appropriate scope of discovery."); *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) ("A trial court enjoys wide discretion in determining the scope and effect of discovery.").

As previously noted, Defendants proposed Discovery Plan would permit full discovery on 46 of the 160 named Plaintiffs and opt-ins prior to the deadline for the Defendants to file a Motion for Decertification. *See* Discovery Plan Mot. at 2. In the alternative, Plaintiffs propose utilizing a properly sized, randomly-selected sample of all Plaintiffs on which to conduct full discovery. Pls.' Resp. at 2.

Plaintiffs argue that a random selection process avoids introducing "party bias" into the selected group. *Id.* at 3. Plaintiffs further argue that Defendants' proposed Discovery Plan isn't "true representative discovery," especially given the fact that Defendants often possess far more information than Plaintiffs in the FLSA context. *See id.* at 2. Plaintiffs take particular umbrage

---

Defendants counter that tax transcripts are "not complete copies of tax returns, and submitting these requests to the IRS would cause additional delay." Defs.' Reply to Mot. to Compel at 4-5, n.3. Courts have held, however, that "a request to have the plaintiff execute an authorization for release of tax records is an acceptable and compellable means of obtaining a party's tax return information." *Butler v. Exxon Mobil Ref. & Supply Co.*, No. CIV.A. 07-386-C-M2, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (citing *Thai v. Miller Truck Lines, Inc.*, 2006 WL 2349605 (W.D. La. 2006). Accordingly, the Court will allow Plaintiffs to satisfy Defendants' Request for Production 1 by signing IRS Form 4506-T. The Court **DENIES IN PART** Defendants' Motion to Compel insofar as it seeks any further material outside of the signed Form 4506-T.

with the fact that Defendants' Discovery Plan not only allows each side to select 15 individuals for full discovery, but further allows for full discovery of the 15 Plaintiffs previously subject to Defendants' Motions for Summary Judgment. *See id.* Plaintiffs support their contention that a random approach to selecting the sample is proper with the supporting Declaration of Sue Stuckwisch, a specialist in economics, finance, data analytics, advanced quantitative methods, and statistics. *See* Pls.' Resp., Ex. A.

Defendants retort that random sample selection is prejudicial because Defendants would be barred from seeking discovery from Plaintiffs who are known or suspected to be outliers or otherwise reflect important variation among the opt-in class. Defs.' Reply to Discovery Plan Mot. at 3. Defendants further note that, in the cases cited by Plaintiffs for the proposition that random selection is the appropriate method, the parties either agreed to a random sample or the number of opt-ins outnumbered the number of opt-ins in the present case at a rate of nearly 10 to 1. *Id.* at 4. Defendants contend that the risk of prejudice inherent in Plaintiffs' plan is not outweighed by any benefit. *Id.*

The Court agrees with Defendants. At the decertification stage of the *Lusardi* approach, the trial court's task is to determine whether the opt-in plaintiffs are similarly situated to the named plaintiffs. *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014), aff'd, 656 F. App'x 688 (5th Cir. 2016). The Court's inquiry is naturally aided by Defendants having the ability to draw the Court's attention to arguable differences between the opt-in Plaintiffs and the named Plaintiffs.

Plaintiffs attempt to characterize Defendants' plan as "biased," but there is nothing improper about Defendants drawing attention to outlying opt-in Plaintiffs who are, in fact, relevant indicators of whether or not a class approach is appropriate. Further, Defendants plan is a double-

edged sword; Plaintiffs will have an incentive to select the most similar of the 15 opt-in Plaintiffs to the named Plaintiffs. While Plaintiffs argue that Defendants are in a better position to select 15 Plaintiffs given their access to information, the Court notes that Plaintiffs' counsel has access to both the Plaintiffs themselves, as well as "18,000 pages of documents recently produced" by the Farm Bureau Defendants. *See* Defs.' Reply to Discovery Plan Mot. at 4.  This adversarial approach ensures a rigorous and thorough inquiry at the decertification stage.

The Court is especially persuaded by this approach given the relative size of the class (140 individuals) compared to the cases cited by Plaintiffs where courts ordered a random sample. *See, e.g., Rosenbohm v. Cellco Partnerships,* No. 2:17-CV-731, 2019 WL 2141901 at *1–2 (S.D. Ohio. May 16, 2019) (ordering random sampling in a class of 3,875 opt-ins); *Nelson v. Am. Std., Inc.,* 2009 U.S. Dist. LEXIS 113448, at *4 (E.D. Tex. Dec. 4, 2009) (ordering random sampling in a class of 1,328 opt-ins). Obviously in cases involving much larger numbers of opt-in plaintiffs, the risk of statistical bias being introduced by allowing parties to select sample members is much higher.

For example, in *Rosenbohm*, the sample size was 94 opt-in plaintiffs out of 3,875. *Rosenbohm*, 2019 WL 2141901 at *1. The sample thus only represented about 2% of the total opt-in Plaintiffs. *See id.* In the present case, both Plaintiffs and Defendants propose a sample size, irrespective of selection method, of about 30 opt-in Plaintiffs out of 140. *See* Pls.' Resp at 2 (proposing 33 opt-in Plaintiffs); Discovery Plan Mot. at 4 (proposing 30 opt-in Plaintiffs).  Thus, under either plan, the sample before the Court would constitute about 20% of the opt-in Plaintiffs. Because the Court will be examining a proportionally larger segment of the opt-in Plaintiffs, the risk that the 20% is unrepresentative of the opt-in Plaintiffs is low.

Turning to the Plaintiffs subject to Defendants' Motions for Summary Judgment, however, Defendants cannot have their cake and eat it too. As an initial matter, the Court will, of course, permit full discovery of the three named Plaintiffs. As Defendants correctly point out, even if the class is decertified, the named Plaintiffs will still proceed to trial on their individual claims. *See* Discovery Plan Mot. at 7.

Defendants argue that the remaining Plaintiffs subject to Defendants' Motions for Summary Judgment should also be subject to full discovery because the Motions for Summary Judgment were denied without prejudice due to the lack of discovery that had occurred at the time of denial. *Id.* at 5 (citing Order Denying Motions for Summary Judgment, ECF No. 109). Defendants argue by not allowing full discovery on the 13 opt-in Plaintiffs,[2] the denial of summary judgment would be, in effect, with prejudice. *Id.* at 5-6. Further, Defendants contend Plaintiffs are "judicially estopped" from arguing otherwise, given Plaintiffs' arguments on Summary Judgment were based in the lack of discovery. *Id.* at 6.

Defendants, however, ignore the fact that they are free to utilize 13 of their 15 selections to pursue full discovery of the Plaintiffs subject to the Summary Judgment motions. In fact, the Court is persuaded, in part, to adopt Defendants' Discovery Plan for precisely this purpose. Had the Court elected to adopt Plaintiffs' proposed plan, random selection could, in effect, convert the Court's non-prejudicial denial of summary judgment to a decision "with prejudice." The Court, instead, elects to hand Defendants the proverbial keys to pursue their previously premature Motions for Summary Judgment. Therefore, the Court **GRANTS IN PART** Defendants' Motion for Discovery Plan.

---

[2] As noted, the Court will permit full discovery of the two named Plaintiffs subject to Motions for Summary Judgment.

## IV.
## CONCLUSION

The Court **GRANTS IN PART** Defendants' Motion to Compel and **GRANTS IN PART** Defendants' Joint Motion for Discovery Plan. Accordingly, the Court **ORDERS** the following:

- the 140 Plaintiffs identified on Exhibit E-1 of Defendant's Motion to Compel shall provide a signed IRS Form 4506-T authorizing the release of Plaintiffs' tax transcripts to Defendants within 14 days from the date of this Order;

- full discovery of 15 Plaintiffs selected by Defendants and 15 Plaintiffs selected by Plaintiffs is **GRANTED**;

- full discovery of the three named Plaintiffs (Heather English, Joe Hawley, and Robin Broussard) is **GRANTED;**

- full discovery of the 13 opt-in Plaintiffs subject to Summary Judgment separate and apart from the 15 Plaintiffs to be selected by Defendants is **DENIED.**

**SIGNED this 27th day of May, 2020.**

_____
**THE HONORABLE JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**